Gill v. Bausch & Lomb

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of December, two thousand fourteen.

PRESENT: DENNIS JACOBS,
REENA RAGGI,
DEBRA ANN LIVINGSTON,
            Circuit Judges.

- - - - - - - - - - - - - - - - - - - -X
DANIEL E. GILL, THOMAS C. MCDERMOTT, and JAY T. HOLMES,
        Plaintiffs-Appellees,

        -v.-                                    14-1058

BAUSCH & LOMB SUPPLEMENTAL RETIREMENT INCOME PLAN I, BAUSCH & LOMB INCORPORATED, and the COMPENSATION COMMITTEE OF THE BAUSCH & LOMB BOARD OF DIRECTORS,
        Defendants-Appellants.
- - - - - - - - - - - - - - - - - - - -X

FOR APPELLANTS:              HOWARD SHAPIRO, with Nicole A. Eichberger, Proskauer Rose LLP, New Orleans, Louisiana.

1

Anthony S. Cacace, Proskauer Rose LLP, New York, New York.

**FOR APPELLEES:** HAROLD A. KURLAND, with William R. Leinen, Ward Greenberg Heller & Reidy LLP, Rochester, New York.

Appeal from a judgment of the United States District Court for the Western District of New York (Telesca, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED.**

Defendants-appellants (collectively, "Bausch & Lomb") appeal from the judgment of the United States District Court for the Western District of New York (Telesca, J.), granting summary judgment in favor of plaintiffs-appellees Daniel E. Gill, Thomas C. McDermott, and Jay T. Holmes ("plaintiffs"). We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

Plaintiffs, three former Bausch & Lomb executives, brought suit under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., alleging that when Bausch & Lomb was bought out by a private equity firm, new management misconstrued the "change-in-control" provision in their retirement plan ("the plan"), and thus unlawfully reduced their pension benefits. The district court agreed, granting plaintiffs' cross-motion for summary judgment. Bausch & Lomb appeals, raising two issues: (1) whether Bausch & Lomb's interpretation of the plan's change-in-control provision was correct (under a de novo standard of review), and (2) if not, whether the district court's remedy for that violation was an appropriate exercise of its discretion. We affirm.[1]

---

[1] The standard of review on the first issue was contested before the district court, which held that the decision should be reviewed de novo, but also that Bausch & Lomb's decision could not even survive the deferential arbitrary and capricious standard. We assume without deciding that the proper standard of review is de novo, because Bausch & Lomb does not challenge this aspect of the district court's ruling on appeal.

**1.** The Compensation Committee of the Board of Directors interpreted the "change-in-control" provision (Section 13 of the plan) to apply to plaintiffs, as "Retired Participants." Although Section 13 only mentions "Participants"--a separately defined term under the plan-- Bausch & Lomb argues that, reading the plan as a whole, "Retired Participants" are a subset of "Participants," so they too are subject to the lump-sum cash-out provision in Section 13. The district court disagreed with Bausch & Lomb's interpretation. As do we.

The major problem with Bausch & Lomb's interpretation is that Section 13 explicitly mentions "Participants," but contains no mention of "Retired Participants." That omission cannot be ignored, because the definitions section of the plan defines the two categories to be mutually exclusive:

> (f) <u>Participant</u> means an employee of the Company who has been selected to participate in the Plan pursuant to Section 4.
>
> [...]
>
> (h) <u>Retired Participant</u> means a former Participant who is receiving benefits under this Plan.

Plan § 2. Accordingly: (1) Retired Participants such as plaintiffs are, in fact, retired, so they are no longer "employee[s] of the Company," as is required to be a Participant; and (2) a Retired Participant, as a matter of logic, cannot be both a "former Participant" and a current Participant (due to the temporal element inherent in the word "former").

Moreover, Section 13 presents one more textual problem for Bausch & Lomb's interpretation. It provides that, for purposes of "determining the Participant's accrued benefit," the "date of the Change of Control" will act as a stand-in for "the date of Termination of Employment." In other words, Section 13 creates an artificial termination date in the event of a change in control (the age of the beneficiary on his termination date is relevant to determining the size of the benefit payment, <u>see</u> Plan § 5(a)). But, as Bausch & Lomb concedes, this provision is critical as applied to Participants (who would need an artificial termination date, because they are still working for the company), but is senseless as applied to Retired Participants (who already

have a termination date--that is, their actual retirement or separation date).  Bausch & Lomb argues that "the most plausible reading of that provision is that it would only redefine termination dates where *necessary*."  But it never explains why the rest of Section 13 should apply to Retired Participants, even though (as it concedes) this language does not.

Bausch & Lomb falls back on a series of arguments about the overall structure and purpose of the plan, which it claims compel the inference that, at least in Section 13, a reference to "Participants" necessarily includes "Retired Participants."  To be sure, an ERISA plan, like any contract, "should be read to give effect to all of its provisions and to render them consistent with each other." Perreca v. Gluck, 295 F.3d 215, 224 (2d Cir. 2002) (quoting Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 63 (1995)).  But most of Bausch & Lomb's structure and purpose arguments are unpersuasive, and in any event, none comes close to the showing required to overcome the plan's plain text, which strongly favors plaintiffs' interpretation.

In sum, because it is plain that Section 13 applies only to Participants, Retired Participants such as plaintiffs do not fall within its scope.

**2.**  Bausch & Lomb also challenges the district court's remedy, which ordered reinstatement of Bausch & Lomb's monthly benefit obligation, while allowing for a one-time "credit" in the amount of the (unlawful) lump-sum that Bausch & Lomb already paid.  "We review a district court's chosen remedy of an identified ERISA violation for an excess of allowable discretion." Frommert v. Conkright, 535 F.3d 111, 117 (2d Cir. 2008), rev'd on other grounds, 559 U.S. 506 (2010); accord Zervos v. Verizon N.Y., Inc., 277 F.3d 635, 648 (2d Cir. 2002).

The district court was faced with an unusual remedial problem.  On one hand, plaintiffs are in possession of a large sum of money they should not yet have (as a result of their successful ERISA lawsuit); on the other hand, Bausch & Lomb will owe them *more* money, in the future, if they live long enough.  The district court's chosen remedy was an appropriate exercise of discretion.  We need not decide whether Bausch & Lomb's proposed alternative--to require return of the lump sum, then begin monthly benefit payments immediately--would also have been permissible.  But the need to craft a remedy, even if imperfect, is the result of

4

Bausch & Lomb's own violations of ERISA.  Under these circumstances, the district court's remedy is not an abuse of discretion.

The district court's remedy does not run afoul of the principle, announced by the U.S. Supreme Court in <u>CIGNA Corp. v. Amara</u>, 131 S. Ct. 1866 (2011), that a district court has no authority to "reform" an ERISA plan.  The only relief ordered by the district court--reinstatement of monthly benefit payments that Bausch & Lomb had unlawfully withheld--was explicitly called for by the plan itself.  And the district court's practical measure of a "credit" in the amount of the lump sum is a traditional application of the remedy of contractual expectation damages--ensuring that plaintiffs are restored to the same financial position they would have been in, but for Bausch & Lomb's breach.  <u>See, e.g.</u>, <u>United States v. Boccagna</u>, 450 F.3d 107, 119 (2d Cir. 2006) ("Expectation damages strive to place an aggrieved party in the same economic position it would have been in had both parties fully performed their contractual obligations.") (internal quotation marks and citation omitted).  <u>Amara</u> instructs a district court to limit itself to "the simple enforcement of a contract as written," 131 S. Ct. at 1877; the district court did just that.

For the foregoing reasons, and finding no merit in Bausch & Lomb's other arguments, we hereby **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

5